IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONNIE G. HAYNES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3368 |
| | § | |
| MICHAEL ASTRUE, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits are Plaintiff's Motion for Summary Judgment (Docket Entry No. 10) and Defendant's Motion for Summary Judgment (Docket Entry No. 7). The Court, having considered the motions, all relevant filings, and the applicable law, **GRANTS** Plaintiff's motion, **DENIES** Defendant's motion, **VACATES** the decision of the administrative law judge, and **REMANDS** this case for further proceedings not inconsistent with this opinion.

### I. CASE BACKGROUND

#### A. Procedural Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration (the "Commissioner") regarding his claims for disability benefits under Title II of the Social Security Act ("the Act").

Plaintiff filed his application for disability insurance benefits on February 18, 2005, alleging an onset date of February 28, 1999, due to bipolar disorder,[1] hepatitis C,[2] a hernia, insomnia, mood swings, suicidal thoughts, back problems, and poor memory. Tr. 62, 73. At a hearing held on March 27, 2007, the administrative law judge (the "ALJ") heard testimony from Plaintiff, a medical expert (the "ME"), and a vocational expert (the "VE"). Tr. 365-93. In his decision issued on May 10, 2007, the ALJ found that Plaintiff was not disabled as of February 28, 1999.

The Appeals Council denied Plaintiff's request for review. Tr. 5-8. Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of this Court's review. Plaintiff filed the pending lawsuit pursuant to 42 U.S.C. § 405(g).

## B.   Factual Background

At the hearing held on March 27, 2007, the ME testified that, during a medical examination on May 19, 2005, Plaintiff reported a history of back pain, insomnia, mental illness, liver problems, hernia, and degenerative disc disease. Tr. 368. On physical examination, Plaintiff weighed 210 pounds, with a blood pressure of 130 over 90 (130/90). *Id.* He smoked one and a half packs of cigarettes per day, and, two or three times per week,

---

[1] Bipolar disorder is a mood disorder in which both depressive and manic or hypomanic episodes occur. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 223 (31st ed. 2007).

[2] Hepatitis C, formerly known as "non-A, non-B hepatitis," is a viral disease that can be transmitted parenterally, such as through a blood transfusion, sharing of needles among drug users, or other intimate personal contact with an infected person. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 856 (31st ed. 2007).

consumed alcohol until he passed out. An x-ray revealed mild scoliosis, with narrowing of the lumbar disc spaces. He was diagnosed at that time with chronic, mild back pain without radiculopathy, alcoholism, multiple joint pain, hepatitis C with fatigue, and mental illness. His back pain was without loss of motion, spasm, arthropathy, or motor or sensory changes. Tr. 369. He was able to sit, stand, and move around, although his daily activities were restricted. He was found to have a serious inability to relate to other people. *Id.*

A mental status evaluation undertaken on May 28, 2005, evinced alcohol dependence, chronic polysubstance abuse, and a non-specific depressive disorder. Tr. 370. A liver biopsy revealed that Plaintiff had cirrhosis.[3] Tr. 374. The ME was of the opinion that Plaintiff's conditions did not meet or equal a medical listing as to section 5.05 (regarding his hepatitis C) or section 1.04 (regarding his degenerative joint disease and lumbar spine condition). *Id.* Plaintiff was evaluated at a light level of work,[4] with no environmental limitations.

---

[3] Cirrhosis describes any of a group of chronic diseases of the liver characterized by loss of normal lobular architecture with fibrosis, and by destruction of parenchymal cells and their regeneration to form nodules. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 371 (31st ed. 2007).

[4] Light work involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves siting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567.

Petitioner's Global Assessment of Functioning ("GAF") score was 60 in May of 1999.[5] In June of 2005, it was estimated at 35. Tr. 187.

Plaintiff testified at the hearing that he was born on June 22, 1947, and finished sixth grade. Tr. 377. He was able to read and write, but not well, and for the past ten years, could remember little of what he read. Tr. 378. His last employment was as a long-haul truck driver. His primary medical complaint at the hearing was his "chronic liver pain," for which he took Interferon. Tr. 379-80. The Interferon made him nauseous, took away his appetite, and gave him headaches. He was chronically fatigued and needed to rest when attempting to do things around the house. Tr. 381. He has experienced back problems for the past two decades, but it worsened after a work-related injury in 2002. He can presently lift either 20 to 25 pounds or 15 to 20 pounds. Tr. 381-82. He can walk two blocks before needing to sit, and can stand for approximately 15 to 20 minutes. On average, he can sit for an hour, and can alternate sitting and standing "all day long." Tr. 383. Plaintiff stopped drinking alcoholic beverages on March 18, 2006, at the advice of his doctors. Tr. 384. He attended Alcoholics Anonymous, but "never would go for very long." *Id.*

---

[5] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV-TR") 32-34 (4th ed. 2000). A GAF rating of 30 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. A GAF rating of 60 indicates moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (such as few friends, conflicts with peers or co-workers). A GAF rating of 20, on the other hand, indicates some danger of hurting one's self or others, a failure to maintain minimal personal hygiene, or gross impairment in communication. Accordingly, the higher the GAF score, the greater the person's functional ability.

Plaintiff testified that he is "bipolar," a condition that leaves him frustrated, angry, and paranoid. *Id.* He is afraid to be in public, and seldom leaves his house. Tr. 385. He finds close relationships, such as family, difficult. He can get along with co-workers for a few months, but his frequent bipolar cycling makes it difficult. Tr. 386. His ability to concentrate is "bad," and he can remember things for only five or ten minutes. Tr. 387. He is able to drive an automobile, but not a commercial truck. Plaintiff provides his own personal care, but his wife does the cooking and most of the housekeeping. Tr. 388. He has no outside activities, and does not exercise. Tr. 390. He takes blood pressure medication, and treats his diabetes by watching his diet. Tr. 391.

The VE testified that Plaintiff's prior jobs were at the medium to possibly heavy exertion work level, and constituted semi-skilled work. *Id.* Plaintiff's only transferrable skills were to light driving jobs, such as delivering cars to dealerships, courier messengers, or a residential or commercial chauffeur. The VE reported that numerous jobs were available regionally and nationally in those occupations. *Id.* On cross-examination, the VE testified that, if commercial driving jobs were excluded because of Plaintiff's medications, he would have no transferrable skills. He further reported that, if Plaintiff's mental residual functional capacity ("RFC") assessment were hypothetically applied, Plaintiff would be limited to unskilled work. Tr. 392.

The ALJ issued his unfavorable decision and findings on May 10, 2007.

### C. The ALJ's Evaluation and Findings

*Evaluation of the Evidence*

In evaluating the evidence, the ALJ noted that, although Plaintiff had severe impairments of hepatitis, degenerative disc disease, and obesity, none was attended by clinical or laboratory findings allowing a finding of a listed impairment. Tr. 18. X-rays taken in May 2005 revealed mild scoliosis, mild to moderate narrowing of the disc spaces from L1 to L5, and mild narrowing and sclerosis of the sacroiliac joints. Tr. 19. A physical examination of Plaintiff's back in May 2005 revealed a full range of motion, and Plaintiff's physician reported that he had symmetrical deep tendon reflexes and normal motor strength. Plaintiff's gait was normal, with full motor strength throughout and no back or spinal abnormalities. The ALJ determined that the listing criteria under section 1.04 for a spinal disorder were not evident.

According to the ALJ, the record did not show evidence that Plaintiff's liver disease was manifested by esophageal varices, elevated serum bilirubin, ascites, or hepatic encephalopathy, and his condition did not meet the listing criteria of section 5.05. Tr. 19. Although Plaintiff met the criteria for obesity with a body mass index of 33 in May of 2005 and February of 2007, the ALJ concluded that his obesity, singly or in combination with other impairments, was not of the severity to equal the criteria of any listed impairment. Tr. at 20.

The ALJ additionally noted that Plaintiff had a bipolar disorder and a history of alcohol abuse, but opined that these impairments were not severe. In support, the ALJ referenced the Psychiatric Review Technique form which indicated that, absent the use of alcohol, Plaintiff had moderate difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence, or pace. Tr. 20. According to a 1994 psychological evaluation, Plaintiff had a normal mood and continued to be alert and well oriented. His memory skills appeared to be consistent with his observed intellectual functioning, with an IQ test result of 83. Additional testing revealed that he read at a seventh-grade level, and performed math and spelling at a fourth-grade level. *Id.* Plaintiff's psychologist diagnosed him as having alcohol abuse in remission and a bipolar disorder.

The ALJ noted that no further treatment or evaluations appeared in the record until Plaintiff's visit to UTMB in April 1999. *Id.* At that visit, Plaintiff complained of alcohol abuse, insomnia, anhedonia, psychomotor agitation, diminished energy and concentration, and anxiety related to crowds. During the ensuing mental status evaluation, Plaintiff's physician noted that Plaintiff appeared neatly dressed and groomed, maintained appropriate eye contact, and was well-oriented with goal-directed thought processes. He appeared intact as to memory, function, attention, concentration, insight, and judgment. Tr. 21. He was prescribed Prozac in May of 1999, but did not seek further treatment until January 18, 2002, when he complained of continuing inebriation with worsening depression. He remained fully oriented, with normal cognitive functioning. *Id.*

The ALJ noted that no medical treatment appears in the records from October of 2002 to June of 2005. On June 30, 2005, he complained of bipolar "episodes," and was placed on medication and referred to a psychiatrist. *Id.* In December of 2005, Plaintiff reported improvement in his symptoms, and in March of 2006, reported compliancy with his medications and eleven days of sobriety. He reported that he was no longer taking anti-depressants in October of 2006, as he no longer experienced symptoms of depression.

In determining that Plaintiff's mental impairment was not severe, the ALJ noted that, in May 2005, Dr. Bailey diagnosed Plaintiff with alcohol dependence, chronic polysubstance abuse, and a non-specific depressive disorder. The ALJ stated that he afforded little weight to Dr. Bailey's conclusions, as they were inconsistent with the doctor's objective findings. Dr. Bailey found that Plaintiff was well oriented, with cohesive, organized, and coherent content of thought. Plaintiff was able to recall a maximum of seven digits forwards and four digits backwards during a digital span test, and was able to recall three of three objects immediately and two of three objects after five minutes. Plaintiff produced a disorganized clock drawing, but was able to spell "world" forwards and backwards, and correctly executed a three-step command. *Id.* Plaintiff reported independence with personal needs, and that he drove, shopped on a monthly basis, handled his finances, and could perform housekeeping chores. Tr. 22. The ALJ concluded that Dr. Bailey's assessment was inconsistent with his evaluation of Plaintiff's twelve-month functional ability.

8

The ALJ concluded that, based on the medical evidence and Plaintiff's own statements, Plaintiff's mental impairments imposed no more than mild restrictions of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Plaintiff's mental impairment was not "severe." *Id.*

The medical records further evinced that Plaintiff had been diagnosed with diabetes and rheumatoid arthritis. The diabetes was controlled through diet, not medication. The rheumatoid arthritis condition was unaccompanied by any supportive laboratory testing or findings on physical examination. *Id.* The ALJ concluded that, as the records showed only a slight or minimal limitation in Plaintiff's ability to perform work-related activities, the impairments were not "severe." *Id.*

The ALJ then considered whether Plaintiff retained the RFC to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. He noted Plaintiff's complaint that back problems and liver pain caused him fatigue after performing activities for more than thirty five to forty minutes, and that he can only stand for fifteen to twenty minutes and sit for five minutes. The ALJ observed that Plaintiff stated elsewhere that he could sit for one hour, and that he gave inconsistent testimony as to what weight he could carry. Tr. 23.

The ALJ concluded that, although Plaintiff's medical impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. He

9

specifically noted that the record failed to document any neurological deficits, significant orthopedic abnormalities, or serious bodily organ dysfunction precluding the performance of all work-related activities.

Medical records for Plaintiff's complaints of back pain showed that Plaintiff fell in May of 2002, and that he was examined by an orthopedic surgeon on June 28, 2002. *Id.* He was noted to have tenderness and muscle spasms of the lower lumbar area, with a reduced range of motion. He was neurologically intact, and was prescribed medication and physical therapy. On follow-up three months later, Plaintiff had tenderness of the lower spine and sacroiliac joints. Range of motion on lower back and leg raises was reduced, but no neurological deficits were observed. No further medical examinations appeared in the record until May 14, 2003, when Plaintiff reported he was "doing a lot better" and had no major pain in his lower back. *Id.* The physician reported Plaintiff's physical examination as "perfectly normal."

Plaintiff reported no further complaints until May 2005, when he reported back pain and arthritis in his wrists and elbows. The examining physician, however, noted that Plaintiff displayed no discomfort in removing his socks and shoes or in getting up on the examination table. Plaintiff had full range of motion in his neck, back, and extremities, with no evidence of crepitus, effusion, or motor loss. Plaintiff was able to sit, stand, and move about. Plaintiff reported experiencing only occasional back pain when examined at UTMB in 2006. Although Plaintiff was positive for hepatitis C in 1993, he did not seek treatment until 2006,

and reported only "tiredness" in 2005. He had no abdominal tenderness or evidence of organ damage. Laboratory tests revealed elevated liver enzyme levels. At the January 2006 UTMB visit, Plaintiff complained of fatigue associated with the hepatitis. Tr. 24. A July 2006 liver biopsy revealed mild, chronic hepatitis and cirrhosis, and Plaintiff was placed on antiviral therapy. Plaintiff reported he was "doing well" in October 2006, and laboratory studies in February 2007 confirmed he was responding to the treatment. *Id.*

The ALJ found that the medical records failed to support Plaintiff's claim of ongoing and disabling symptoms, and that the records as a whole showed Plaintiff was less than forthcoming regarding his symptoms and functional limitations. *Id.*

*Findings*

The ALJ found that Plaintiff was insured for disability benefits through at least the date of his decision on May 10, 2007, and that the work Plaintiff performed subsequent to the alleged onset date did not constitute gainful activity. Tr. 27. He found that Plaintiff had hepatitis, degenerative disc disease, and obesity, which are "severe" as defined in 20 C.F.R. § 404.1520(c), but that they did not meet or medically equal a listed impairment. *Id.* He further found Plaintiff's allegations regarding his limitations "not credible," and that he had a RFC to perform light work. The ALJ found that Plaintiff was unable to perform any of his past relevant work, was an "individual closely approaching advanced age," and had a "marginal education." *Id.*

The ALJ further found that Plaintiff had transferrable skills from semi-skilled work previously performed, and that, based on the VE's testimony, Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy, such as car rental driver, courier, and chauffeur. *Id.*

The ALJ concluded that Plaintiff was not under a "disability" as defined in the Act at any time through the date of the decision. *Id.*

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the

decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's decision satisfies both of these requirements, it must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### A. "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

**B.     Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)     a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)     a claimant will not be found to be disabled unless he has a 'severe impairment';

(3)     a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4)     a claimant who is capable of performing work that he has done in the past must be found 'not disabled'; and

(5)     if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

### III.  ANALYSIS

The ALJ rejected Plaintiff's argument that his chronic liver conditions equaled a section 5.05 chronic liver disease listing. In his motion for summary judgment, Plaintiff argues, *inter alia*, that the ALJ erred as a matter of law in determining, without supporting testimony from the ME, that Plaintiff's impairments did not equal the listed criteria for chronic liver disease in Appendix 1, Subpart P, Regulations No. 4, section 5.05. For this

reason, he argues, the ALJ's finding against disability is not supported by substantial evidence and proper legal standards were not used in evaluating the evidence. This Court agrees.

Section 5.05 provides that a claimant meets the listing if his chronic liver disease is confirmed by liver biopsy and if another condition, such as ascities, serum bilirubin of 2.5 milligrams per 100 milliliters, or hepatic cell necrosis or inflammation, exists in conjunction with chronic hepatitis C. In order for Plaintiff to show that his impairment matches this listing, he must meet all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Plaintiff concedes that he did not meet this listing criteria. He argues, however, that the ALJ did not properly evaluate whether Plaintiff *equaled* the listing criteria for chronic liver disease, and that his finding against such is unsupported by substantial evidence and constitutes error as a matter of law.

In determining medical equivalence, the Act's regulations provide that an impairment is equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of a listed impairment. 20 C.F.R. 404, § 1526(a). The regulation further provides that an ALJ must utilize a medical adviser when determining whether a claimant's impairments are equivalent in severity to impairments in the listings. Social Security Ruling (SSR) 96-6p (1996), 1996 WL 374180. The ALJ is under an affirmative duty to develop the record fully,

and where an ALJ's failure to do so results in prejudice to a claimant, remand is required. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

As shown by the following exchange at the hearing, the ME was asked, but did not answer, whether Plaintiff's conditions equaled a medical listing:

    Q:    Do his conditions meet or equal a medical listing?

    A:    With regards to the Hepatitis C, he does not meet 5.05. With regards to his degenerative joint disease, lumbar spine, he does not meet 1.04, your Honor.

Tr. 370. In short, the ME expressed no opinion as to whether Plaintiff's conditions did, or did not, equal a medical listing.

The basic principle behind SSR 96-6p is that, while an ALJ is capable of reviewing records to determine whether a claimant's ailments *meet* the listings, expert assistance is crucial to an ALJ's determination of whether the claimant's ailments *equal* the listings. In this case, the ALJ was required to determine whether Plaintiff's conditions were medically equivalent to the listings, particularly as to section 5.05 regarding chronic liver disease, and, as a matter of law, that determination required input from a medical expert. His failure to obtain that input violated the requirements of SSR 96-6p, violated his duty to develop the record, and resulted in prejudice to Plaintiff.

Accordingly, this Court concludes that the ALJ's finding that Plaintiff's medical conditions did not equal the criteria for a section 5.05 listed impairment is not supported by substantial evidence in the record, that the record was not fully developed as to the

equivalency issue, and that the ALJ erred as matter of law in reaching this determination in absence of supporting expert testimony from the ME.[6]

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for summary judgment (Docket Entry No. 10), **DENIES** Defendant's motion for summary judgment (Docket Entry No. 7), **VACATES** the ALJ's decision, and **REMANDS** this case to the ALJ for further proceedings not inconsistent with this Memorandum and Order.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 26th day of March, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[6]Because this legal error warrants remand of this case, the Court does not reach Plaintiff's other two summary judgment grounds.